Good morning, Your Honors. My name is Sylvia Esparza and I represent Mr. Olivares. May it please the Court. There are two central issues for this Court to decide. Whether there is substantial evidence in the record to support the denial of protection under the Convention Against Torture for Mr. Olivares and whether the government has carried its burden of proof by clearing convincing evidence that Mr. Olivares' conviction is an aggravated felony. And the answer to both of those questions is no. In regards to his cat claim, Mr. Olivares was a former gang member who had quit the gangs back in late 90s. Throughout his life he had accumulated 134 tattoos and 12 of those which were gang-related. He had the gang-related tattoos were visible on his hands and on his face. Considering the above, the obvious risk factors and the significant country condition reports and articles that highlighted the immediate danger to individuals like Mr. Olivares that he would face because of his tattoos and also the presumption that he was a gang, a current gang member. And in combination with the credible testimony that he had and the testimony of his mother, which identified a case where his cousin was similarly situated as Mr. Olivares, had the gang tattoos, had been a former gang member, was deported back to El Salvador and upon return was shot. Considering that cumulative evidence, it would be, it's not reasonable for a fact finder to find that somebody like Mr. Olivares would not meet the 50% or more probability that torture would occur to him. The major problem in the Immigration Judges decision and the Board of Immigration Appeals decision is that they neglect to review the country conditions and the numerous articles that were submitted. The human rights study by Harvard indicated that gang members were harassed and physically abused by the police and targeted by assassination by rival gang members. The report further indicates that police rarely, if ever, protect gang members. The Office of the National Human Rights Office did not operate within the police departments. The United States Country Condition Report also indicated there was widespread corruption and weaknesses in security forces and high level of impunity within the government. The Office of Ombudsman for Human Rights indicated that the prisons held more than 10,000 gang members and that the prisons were overcrowded by 320%, which created a torturous environment and there was a substantial risk for the lives of the prisoners. The Congressional Research Report indicated that El Salvador had the highest concentration of gangs and that there was prisoner abuse and torture was not uncommon. This Court has addressed in Aguilar-Ramos the failure of the IJ and in the Board of Immigration Appeals to address country conditions to constitute reversible error. And even though this Court later in Burr, Bach v. Holder and Cole addressed that the agency doesn't have to look at every piece of evidence, they cannot ignore highly probative evidence of the country conditions, which is what happened in this case. Ms. Esparza, let's talk about the divisibility of the Nevada statute in question here. Okay. Has Nevada ever looked at this particular provision's divisibility? Judge, we could not find any cases that were right on point with the statute under which Mr. Olivares was convicted. So that's definitely one of the distinctions. In that case, the only cite to the Mueller case, and that case involves multiple substances, so it is different than our case. And so why should we, I guess, decline to follow the Tenth Circuit and its decision and I think it's Reese-Guell v. Holder, which found it to be indivisible? Well, we don't believe it's very persuasive because it doesn't talk about also the divisibility of the statute. It doesn't talk about the fact that it's indivisible. It also requires that there be jury unanimity regarding the elements of the offense. And there hasn't been any cases discussing the jury unanimity for the elements of the offense. We cited to some examples of jury instructions for these types of cases, and there's no convincing evidence that, yes, the record shows he has been convicted of an aggravated felony, and that's not here. There's only the Mueller case that they cite to all the time. There hasn't been any other cases cited by the government, and the jury instructions are also unclear. But if we find, let's assume, that this 453- or .337 statute question here is not indivisible, where does that leave your client? Does his 2012 conviction under 453.321 matter here at all? No, Judge, because if it's just a controlled substance event and not an aggravated felony conviction, then he would be eligible for cancellation of removal. That's the reason the Board of Immigration Appeals only addressed the aggravated felony conviction as a drug trafficking crime, because it would disqualify him from cancellation of removal. If it's just possession of a controlled substance or transport of a controlled substance, then that's not considered an aggravated felony, and he could still apply for cancellation of removal. And so that prior conviction was for just possession? The 2012? Yes. I believe it was possession and transport. Oh. Because it's styled as transport and sale of a controlled substance, so that's what made me curious. The statute reads transport and sale. So I'm just trying to figure out why that one was distinguishable. Yeah. I don't think so. I mean, definitely the Board of Immigration Appeals didn't address. They, in their decision, said that this is not relevant because we're just going to look at the aggravated felony. The only offense that really matters here would be the 2004 offense. So if the court would find that it's not divisible, then he would be eligible. They couldn't do the categorical modified approach and look at the record of conviction, and he would be eligible for cancellation of removal, since he had been a local permanent resident since 1986 and has three U.S. citizen children, minors, who had a loving relationship with him, had not been a gang member for over 20 years and also had other significant family members in the United States. So does the court have any other questions in regards to the CAT claim? Do you want to reserve the rest of your time? May it please the Court. Victor Lawrence on behalf of the Attorney General. This Court should deny this petition for review because under a proper analysis, Petitioner's 2004 conviction under the Nevada statute qualifies as a drug trafficking crime and therefore an aggravated felony. This renders the petitioner removable and it makes him ineligible for asylum and cancellation of removal. Would a jury be required to find that the petitioner was convicted of a particular controlled substance in order to convict under this NRS 453337? Yes, Your Honor, and our basis for that Or is it enough that it's just that he had one of the substances listed? Your Honor, it's the government's position that the identity of the controlled substance is necessary to prove and for a jury to convict on. We base that on the language specifically in the Mueller opinion from the Nevada Supreme Court. In the Mueller? Is that what you said? Yes, the Mueller decision. Do you have any model jury instructions from Nevada showing that the jury has to identify the specific substance in order to convict under that? Or is there anything else that might be helpful to further sort of establish that? Well, I think there are two things. One, there's the idea that the statute itself is listed in the disjunctive. So they're talking about various different elements that a jury can convict for this particular crime. So there's the way the statute is worded and that's bolstered by the Supreme Court's decision in Mueller, the Nevada Supreme Court. There are no particular jury instructions that we found that are authoritative for the state of Nevada. Of course, in the Mathis decision by the Supreme Court, the Supreme Court has indicated that you should look to authoritative sources of state law. And the most authoritative source of state law in this particular case is from the Nevada Supreme Court and its decision in Mueller, which says you have to identify the identity of the controlled substance in order for there to be a conviction. So we think that under the proper divisibility analysis that the court should find, and that there's no dispute with Petitioner here, it's not a categorical match. So you go to whether or not it's divisible. You look at the fact of the language and how it's written in the injunctive, but you also look at the decision of the Nevada Supreme Court. Once you look at that and you determine that it's divisible, then you could look at the documents. And the documents further support here that this was a case in which the individual was convicted for purposes of selling marijuana. And that is a controlled substance under 21 U.S.C. 841A. And therefore, he is an aggravated felon. So we, and the Moncrief exception, as the Board indicated, does not apply, and I don't think that there's any dispute on that. So as a result, he's not eligible for asylum or for cancellation of removal. Now, on the withholding claim, this is a little confusing. In subsequently reviewing the briefs and considering this further, the Board indicated that the Petitioner did not exhaust this claim. And I think the principal argument we have for withholding is that the Petitioner did not exhaust this claim about it being a particularly serious crime when it appealed to the Board. And as a result, he's waived that claim with respect to withholding. So the Court should deny a petition for review with respect to that, to the withholding claim. Finally, on the Convention Against Torture, the issue here is whether or not the Board's decision is supported by substantial evidence. It's our position that it is supported by substantial evidence. The Board and the agency noted that the Petitioner has not been a gang member for over 20 years and that there's no real evidence of acquiescence by the immigration judge noted that, sure, this person has 134 tattoos. There's a possibility that he could experience some harm if he's returned to El Salvador. The question is, has he satisfied his burden of proof under the Convention Against Torture? Has he shown that it's more likely than not that he will suffer torture? And here the immigration judge found that it was not and further found that there was no evidence, real evidence, of acquiescence. And the best that the Petitioner can do to come back and challenge this is to point out things, not that, hey, you're missing this piece of evidence, although the Petitioner started rattling off different things about what the country conditions report show. Her main argument in her brief was that the Board did not review or the agency did not review the country conditions reports. That's clearly belied by the record. If the Court looks at the immigration judge's decision at page 103 through 105, it's clear that the immigration judge did, in fact, look at the country reports. It just didn't find them to be highly probative and the immigration judge explained why. Then when the case got to the Board of Immigration Appeals, the Board of Immigration Appeals, it agreed. There was no clear error anyway with respect to the decision on denying the protection under Convention Against Torture. So I think Petitioner's statement about the Harvard Law Review article, particularly complaining that the Board and agency didn't really delve into this article, I note that she, that the Petitioner never really said anything about what's in this article that's so important that would cause this Court to believe that the record should compel a contrary result under the Substantial Evidence Standard. So I don't think that the Court should find that to be persuasive. Overall, I think the Court should find that this was a drug trafficking crime. Therefore, it is an aggravated felony. She would be, the Petitioner, he would be ineligible for asylum, cancellation of removal, and again, that the Convention Against Torture claim is supported by substantial evidence, particularly when you look at the fact also that this individual hasn't been in a gang for over 20 years. So what, and this is something that the agency relied on, and this is part of the substantial evidence, I think, that they relied on. What evidence was there in the record that an individual who has not been in El Salvador in over 30 years and has not been in a gang in over 20 years would actually suffer torture upon his return there? And many of the sources that the Petitioner has cited with respect to gang violence have to do with individuals who are youths in El Salvador who are still in the gang or appear to still be in the gang. Conversely, this Petitioner is somebody who now is over 47 years old and does not appear to be gang youth. So a lot of the, one questions the relevance of a lot and how probative a lot of evidence is that Petitioner is raising with this Court. So unless the Court has further questions, we would ask that the Court deny this petition for review. No questions here. Okay. Thank you. Thank you, Your Honors. Okay. I'd just like to point out that the government has conceded that there are no other cases but the Mueller case. And the Mueller case is different than our case because it talks about multiple controlled substance offenses. And that's a real distinction for our case. In addition, they haven't pointed out to other jury instructions which are exactly the same as the Mueller case. So the Mueller case is different. It's extremely important in deciding what are the elements of the offense. So if we don't have a clear jury instruction that shows that there needs to be jury unanimity, then how can we say that that is an element of the offense? We can't. And so because there's an ambiguity in the record, then the alien wins because it should be in light in favor of him. In regards to the cat claim, the problem here is the government repeats the same issue that the immigration judge and the Board of Immigration Appeal has indicated, and that is they say what kind of evidence? There's no real evidence. That's the problem. They don't look at the country condition report that has been submitted and all the various articles that highlight that individuals just like Mr. Olivares that have been in the country for 20 years, and they completely discount this evidence without any reason. Their reason is because, oh, well, he hasn't been a gang member in over 20 years. But that doesn't take away the tattoos. He still has them. And who's to say that once the police arrest him or detain him or stop him or a rival gang member or a gang member that wants to recruit him is going to believe that he's no longer a gang member? Counsel, is Judge Gould, if I could interject a question? Yes. You said he has a heightened risk of torture as a result of his tattoos. Correct. Don't you have to show that there's a probability, more likely than not, that there will be torture because of his tattoos? Yes, Judge. We believe that there is a heightened risk, and that heightened risk translates into more than 50 percent because of the numerous tattoos that he has and all of the other fact patterns. The fact that he has visible tattoos on his face, visible tattoos on his hands, which he could not cover. He testified that he could only cover them if he wore gloves. In El Salvador, that's going to be even more suspicious. And then he also had tattoos on his face that he couldn't cover. And combined with the country condition report and all the other articles that we cited to that do say that individuals with tattoos that are former gang members or gang members, that there is a risk of torture, that these people are routinely arrested, detained, imprisoned without cause just because of their tattoos or because they belong to a gang or were gang members. And so that's why it's more than 50 percent here with all the evidence that was presented, plus the testimony of his mother that indicated that a person just like Mr. Olivares had former gang membership, gang tattoos, been deported, gets returned to El Salvador, and as soon as he gets there, he gets shot. Okay. Thank you. And also the regulations require that all evidence be evaluated. And here, again, the immigration court and the BIA and the government's argument is that there is no real evidence, and they're discounting all this other evidence that was included in the record of proceedings, and there's no reason for them to dismiss it. And this court has been very clear on having to review all of that evidence. It's clear error if you haven't reviewed the evidence, and you can't just simply ignore evidence that is highly dispositive. And for those reasons, we would request that the court find that there was substantial evidence in the record to find that there was a probability, more than 50 percent chance that he would be at risk of harm by the government, and also to find that the government has not met its burden of proof to show that it's an aggravated felony because the divisibility is not clear with the Mueller case and the failure to bring jury instructions that show that there is a unanimity that is required for each of those elements. Thank you. Thank you. Thank you very much. I appreciate the arguments presented here on this case. So, Ms. Spars, Mr. Lawrence, thank you. The matter of Ivan Daniel Olivares-Morales v. Jefferson Sessions is now submitted.
judges: Gould, Murguia, Freudenthal